**RICHARD R. BEST**
**REGIONAL DIRECTOR**
**Lara Shalov Mehraban**
**Vanessa De Simone**
**Bennett Ellenbogen**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, NY  10004-2616**
**(212) 336-0062 (Ellenbogen)**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                              **Plaintiff,**<br><br>        **-against-**<br><br>**JOSEPH ORAZIO DEGREGORIO,**<br><br>                              **Defendant.** | **COMPLAINT**<br><br>**21 Civ. _____ (      )**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Joseph Orazio DeGregorio ("DeGregorio" or "Defendant"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      This matter involves a former broker, DeGregorio, who raised approximately $1.2

million from several elderly investors between October 2015 and March 2021 (the "Relevant

Period"), so that he could then steal the vast majority of those funds for his personal use.

2.      In some instances, DeGregorio falsely told the investors that their funds would be

used to purchase promissory notes guaranteeing a 13% annual return.  In other instances,

DeGregorio falsely claimed that he would invest the funds in two private companies: Blue Omega,

Inc. ("Blue Omega"), a purported cyber-security firm, and Globotix, Inc. ("Globotix"), a purported financial consulting firm.

3.       In fact, the promissory notes did not exist, and the two private companies – which did not carry out any real business activities – had been created by DeGregorio to facilitate his fraud.

4.       DeGregorio misappropriated the vast majority of the investor funds to pay for various personal expenses.  DeGregorio also used a small portion of the investor funds to make purported "interest payments" on the fake promissory notes to investors, thereby fostering the misleading impression that the notes were genuine and encouraging the investors to make additional investments with him.

## VIOLATIONS

5.       By virtue of the foregoing conduct and as alleged further herein, Defendant DeGregorio has violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

6.       Unless DeGregorio is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7.       The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

8.       The Commission seeks a final judgment: (a) permanently enjoining DeGregorio from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering DeGregorio to disgorge all ill-gotten gains he received as a result of the violations

alleged here and to pay prejudgment interest thereon pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)] and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and 78u(d)(7); (c) ordering DeGregorio to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

9.       This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)], and Exchange Act Section 27 [15 U.S.C. § 78aa].

10.       DeGregorio, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

11.       Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)], and Exchange Act Section 27 [15 U.S.C. § 78aa].  DeGregorio resided in the Eastern District of New York during the Relevant Period, and certain of the acts, transactions, practices and courses of business alleged herein took place in the Eastern District of New York.  While residing in the Eastern District of New York, DeGregorio solicited investments and requested the funds be sent to his residence, as well as to a corporate entity he controlled that was located in the Eastern District of New York.

## DEFENDANT

12.       DeGregorio, age 45, resides in Freehold, New Jersey.  During the majority of the Relevant Period, he resided in Staten Island, New York.  Between October 2015 and February 2017, DeGregorio was associated with two different registered brokerage firms.  From March 13, 2017 to December 31, 2017, from June 2019 to July 2019, and from August 2021 to March 2021,

DeGregorio was an independent representative of an unregistered affiliate of a Middletown, New Jersey-based broker-dealer, investment adviser and fintech firm that, among other things, markets investments in private funds (the "Middletown Firm").

13.     In September 2017, DeGregorio was suspended from acting as a broker by the Financial Industry Regulatory Authority ("FINRA") after failing to pay an arbitration award in a dispute with one of his former brokerage firms.

## FACTS

## I.     DEGREGORIO SOLICITED INVESTMENTS IN FAKE PROMISSORY NOTES

14.     This matter involves a long-running fraud scheme orchestrated and run by DeGregorio, which ultimately raised approximately $1.2 million from four investors: Investor A, age 94; Investor B, age 80; Investor C, age 87; and Investor D, age 78.

15.     DeGregorio sought out investors by, among other things, making cold calls to them. Over time, he gained their trust and confidence, including by claiming that he was a successful financial professional with high-net worth clients around the world.

16.     Beginning in approximately 2015, DeGregorio began soliciting funds from investors for purported promissory notes, which DeGregorio claimed had a guaranteed 13% annual return. DeGregorio represented that the entity offering the note, TDJD Corp. ("TDJD"), earned revenue by making short-term loans to small businesses.

17.     Between approximately October 2015 and January 2019, each of Investors A, B, C and D agreed to invest in the purported promissory notes and sent DeGregorio funds that were intended for that purpose.

18.     Investor A invested $100,000 in the purported promissory notes in approximately October 2015.

19.     Investor B invested approximately $100,000 in the purported promissory notes between approximately May 2016 and January 2019.

20.     Investor C invested approximately $25,000 in the purported promissory notes in approximately July 2016.

21.     Investor D invested approximately $25,000 in the purported promissory notes in approximately January 2017.

22.     DeGregorio's representations to investors about the promissory notes were false.  In reality, TDJD was a shell company created, owned and controlled by DeGregorio, which did not carry out any actual business activities.

23.     TDJD did not issue any actual promissory notes and none of the investors' funds went to make loans to small businesses.

24.     Instead, DeGregorio misappropriated the vast majority of the investor funds sent to TDJD for his personal use, including to pay for his living expenses, as well as for his drinking and gambling habits.

25.     DeGregorio used a limited portion of the investor funds to make so-called "interest payments" back to each of Investors A, B, C and D.  These "interest payments" helped DeGregorio convince the investors that the promissory notes were genuine, thereby concealing and perpetuating his fraud.  In total, DeGregorio returned approximately $62,500 to investors in the form of the purported "interest payments."

26.     Separately, DeGregorio returned $50,000 to Investor A in approximately November 2015.

27.     DeGregorio never revealed to investors that he owned and controlled TDJD, or that the promissory notes were fake.  Likewise, DeGregorio never revealed to investors that the money

he used to make the purported "interest payments" came from their own funds or the funds of other investors.

28.     At all relevant times, DeGregorio knew or recklessly disregarded that his representations about the promissory note were materially false and misleading. Among other things, DeGregorio knew or recklessly disregarded that (a) TDJD had not made, and never intended to make, loans to small businesses; (b) TDJD had not issued, and never intended to issue, genuine promissory notes; and (c) DeGregorio intended to keep the vast majority of the investor funds raised in connection with the purported promissory notes for himself.

29.     Similarly, DeGregorio knew or recklessly disregarded that the so-called "interest payments" made to investors were simply the investors' own funds, and did not represent genuine investment returns or relate to any small business loans.

## II.  DEGREGORIO SOLICITED INVESTMENTS IN TWO COMPANIES HE SECRETLY CONTROLLED

30.     In or around 2017, DeGregorio began touting two additional sham investments, Blue Omega and Globotix.

31.     First, DeGregorio solicited investments in Blue Omega, which he falsely claimed was a private cyber-security company. Among other misleading statements, DeGregorio told at least one investor that Blue Omega was likely to become a public company.

32.     With respect to Investor B, who was a client of the Middletown Firm, DeGregorio also falsely told Investor B that the Blue Omega investment opportunity was offered through the Middletown Firm.

33.     Based on DeGregorio's false representations, Investor B invested approximately $225,000 in Blue Omega between approximately November 2017 and August 2018.

34.     Second, DeGregorio solicited investments in Globotix, which he falsely claimed was a financial consulting company that was involved in purposed special purpose acquisition company

or "SPAC" transactions.  In at least one instance, DeGregorio falsely represented that Globotix made investments in promising private companies that would be taken public through SPACs, such as "Lionsgate Technologies" and "Genesis Technologies."

35.     With respect to Investor B, DeGregorio again falsely suggested to Investor B that the investment in Globotix was being offered through the Middletown Firm and, at times, encouraged Investor B to sell certain of Investor B's legitimate investment holdings at the Middletown Firm so that he would have cash available to invest in Globotix.

36.     Investor B ultimately invested $675,000 in Globotix between approximately May 2019 and March 2021.

37.     Similarly, Investor C invested $55,000 in Globotix in approximately September and October 2020.

38.     DeGregorio's representations about Blue Omega and Globotix were entirely false. Blue Omega and Globotix were not successful independent ventures, but instead shell companies that had been incorporated by DeGregorio in order to defraud investors.  Both were owned and controlled by DeGregorio and neither carried out any real business activities.

39.     DeGregorio did not use any of the investor funds sent to Blue Omega or Globotix for legitimate purposes.  Instead, he continued to use the money to pay for his own personal expenses.

40.     DeGregorio did not return any of the investor funds raised in connection with Blue Omega or Globotix to investors, except to the extent that certain of the "interest payments" described in paragraphs 25 and 26, above, may have included investor funds raised in connection Blue Omega and/or Globotix.

41.     DeGregorio did not disclose to investors that he owned and controlled Globotix and Blue Omega, and that both companies had been created for the purpose of stealing investor funds.

42.    DeGregorio knew or recklessly disregarded that his representations to investors about Blue Omega and Globotix were false.  Among other things, DeGregorio knew or recklessly disregarded that (a) Blue Omega did not carry out any cyber-security business or other legitimate business; (b) Globotix did not carry out any financial consulting business, make any SPAC-related investments, or carry out any other legitimate business; and (c) that DeGregorio intended to misappropriate the funds raised from investors in connection with Blue Omega and Globotix.

43.    DeGregorio also knew or recklessly disregarded that his claims to Investor B that the Blue Omega and Globotix investments were being offered through the Middletown Firm were false.

### FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)

44.    The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 43.

45.    DeGregorio, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently has engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

46.    By reason of the foregoing, DeGregorio, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

47.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 43.

48.     DeGregorio, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

49.     By reason of the foregoing, DeGregorio, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining DeGregorio and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering DeGregorio to disgorge all ill-gotten gains he received, directly or indirectly, with

pre-judgment interest thereon, as a result of the alleged violations;

**III.**

Ordering DeGregorio to pay civil monetary penalties under Securities Act Section 20(d)

[15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Granting any other and further relief this Court may deem just and proper.

Dated:  New York, New York
         March 1, 2022

*Richard R. Best*

RICHARD R. BEST
REGIONAL DIRECTOR
Lara Shalov Mehraban
Vanessa De Simone
Bennett Ellenbogen
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY  10004-2616
(212) 336-0062 (Ellenbogen)
EllenbogenB@sec.gov